IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRIAN BUCHANAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:19-CV-199-MAB |
| | ) |
| DR. MOHAMMED SIDDIQUI AND | ) |
| DR. VIPIN SHAH, | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on the motion for summary judgment filed by Defendants Dr. Mohammed Siddiqui and Dr. Vipin Shah. For the reasons explained below, Defendants' request for summary judgment is granted in part and denied in part. Specifically, it is granted as to Defendant Shah and it will be denied as to Defendant Siddiqui.

### BACKGROUND

Plaintiff Brian Buchanan ("Plaintiff") brings this civil rights action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Plaintiff alleges Defendants were deliberately indifferent to his serious medical needs by delaying the renewal of his pain medications, in violation of the Eighth Amendment (Doc. 1).

Following a threshold review of the Complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on the following claim:

>    **Count 1:**   Dr. Siddiqui, Nurse Practitioner M. Zimmer, and Dr. Shah were deliberately indifferent under the Eighth Amendment in delaying the renewal of Plaintiff's prescription for pain medication.[1]

(Doc. 8).

On April 12, 2021, Defendants filed a motion for summary judgment on the merits of Plaintiff's claims (Docs. 63 & 64). On May 3, 2021, Plaintiff filed a response in opposition to Defendants' motion for summary judgment (Docs. 65 & 66). On May 7, 2021, Defendants filed a reply in support of their motion for summary judgment (Doc. 68).

## UNDISPUTED MATERIAL FACTS

The following material facts are not genuinely disputed.[2] Plaintiff has a long history of back pain, following a vehicle accident in 2007 (Doc. 63-1, p. 12). On September 11, 2017, Defendant Siddiqui prescribed Plaintiff the pain medication Tramadol (Doc. 63-3, p. 24). On October 12, 2017, Defendant Siddiqui conducted a "jacket review" of Plaintiff's medical records and renewed Plaintiff's Tramadol prescription for an additional three months (Doc. 63-2, p. 2-3) (Doc. 63-3, p. 28-29) (Doc. 66-6, p. 43-44). A jacket review is a process where the physician reviews a medical chart without seeing the patient (Doc. 63-5, p. 52). Defendant Siddiqui testified the Tramadol prescriptions were necessary for Plaintiff's back pain (Doc. 63-3, p. 27-29).

On October 19, 2017, Plaintiff underwent an elective primary transforaminal interbody fusion of the lumbar spine at Heartland Regional Medical Center

---

[1] Count 1 was dismissed without prejudice as to Defendant Zimmer (Doc. 8).
[2] In addition to the cited materials, the Court considered materials in the record that were not cited in the parties' summary judgment briefing. *See* FED. R. CIV. P. 56(c)(3).

("Heartland") (Doc. 63-4). On October 20, 2017, Plaintiff was discharged from Heartland and his surgeon ordered him to continue taking Gabapentin and Tramadol (Doc. 66-1). A medical record from Heartland noted that Plaintiff's pain was "minimal" (Doc. 63-4). A physician from Heartland wrote Plaintiff prescriptions for Gabapentin, Hydrocodone-Acetaminophen, Tramadol, and a back brace (Doc. 63-4).

The same day he was discharged from Heartland, Plaintiff was placed in the infirmary at Menard Correctional Center for observation (Doc. 63-2, p. 4), and Defendant Siddiqui wrote Plaintiff prescriptions for Tramadol and Gabapentin for one month (Doc. 63-2, p. 5). Medical records from October 28, 2017 indicate that Plaintiff was taking his pain medications but not his non-pain medications, declined to wear a back brace, flexed at a 90-degree angle when bending over, and stated he was "ok" (Doc. 63-2, p. 6-7).

Defendant Siddiqui wrote Plaintiff a prescription for Tramadol for one month on November 1, 2017 (Doc. 63-2, p. 8, 10), and a prescription for Gabapentin for a period of three months on November 3, 2017 (Doc. 63-2, p. 9-10). Medical records from November 4, 2017 state Plaintiff complained, "This is bullshit, I can't watch TV or nothin' …My Dr. said I could go back to the cell house" (Doc. 63-2, p. 11). Medical records from November 6, 2017 state Plaintiff was ambulating without his back brace, Plaintiff stated he felt good and stronger, and Plaintiff bent at a 90-degree angle to speak through the chuck hole (*Id.* at p. 12). On November 8, 2017, Plaintiff was discharged from the infirmary (*Id.* at p. 13).

Nursing staff at Menard pass out medications to inmates (Doc. 63-1, p. 28-29), and are responsible for reading, understanding, and completing medication administration sheets ("MARs") (Doc. 63-5, p. 13-14). Nurses are also responsible for alerting a physician

when an inmate's prescriptions are expiring (Doc. 63-3, p. 47-49, 51-52). Menard does not have an automatic alert system that notifies physicians about expiring medications (*Id.*). The nurses at Menard also gather medical charts and complete healthcare unit movement charts (Doc. 63-5, p. 50, 64-65).

Plaintiff received Tramadol for the entire month of November (Doc. 63-2, p. 19) (Doc. 63-5, p. 15-17). Nurse Mears-Attig distributed Plaintiff's medications on several of those occasions (*Id.*). Between November 1 and November 27, 2017, Plaintiff was dispensed his Gabapentin, but then, the nurse marked "N/A" (Doc. 63-2, p. 19), which means the medication was unavailable (Doc. 63-5, p. 27-28). Plaintiff stopped receiving his Gabapentin on November 28, 2017 (Doc. 66-2, p. 2). During November 2017, Plaintiff received aspirin and a muscle relaxant, Robaxin (Methocarbamol) (Doc. 63-1, p. 38-39) (Doc. 63-2, p. 18).

Plaintiff's Gabapentin was not dispensed at all in December 2017 (Doc. 63-2, p. 20). Plaintiff received his Tramadol on December 1, 2017 (Doc. 63-2, p. 21) (Doc. 63-5, p. 21). However, Plaintiff's Tramadol prescription expired on December 1, 2017 (Doc. 63-5, p. 21-22), and Plaintiff stopped receiving the medication after this date (Doc. 66-2, p. 5).

Plaintiff handed prescription renewal requests (or "kites") to nurses in the cellhouse (Doc. 66-4, p. 19 & 35). Nurse Mears-Attig remembers Plaintiff and recalls he handed her "kites" while complaining he was not receiving his Tramadol or Gabapentin (Doc. 66-5, p. 39). Nurse Mears-Attig did not disregard Plaintiff's "kites" (*Id.*).

On December 5, 2017, Plaintiff filed a grievance regarding his Gabapentin and Tramadol (Doc. 66-7, p. 3). Plaintiff was seen in nurse sick call on December 6, 2017 and

requested renewals of Gabapentin and Tramadol ((Doc. 66-2, p. 9). Plaintiff's Gabapentin and Tramadol were not renewed on December 6, 2017 during his nurse sick call visit (*Id.*).

On December 8, 2017, Defendant Siddiqui signed a response to Plaintiff's grievance concerning his pain medication, which states, "Dr. Siddiqui, the facility Medical Director and I have reviewed your grievance and medical record and offer the following: On 12/5/17 you wrote a grievance related to medical treatment. You were seen on nurse sick call on 12/6/17. . .I have scheduled you with Dr. Siddiqui for a follow-up related to pain and meds" (Doc. 66-7, p. 2).

Plaintiff was scheduled for the medical call line to see Defendant Siddiqui on December 12, 2017 (Doc. 63-6, p. 5). On December 12, 2017, Plaintiff was issued a call pass to see Defendant Siddiqui, but Plaintiff's medical chart could not be located (*Id.*). Defendant Siddiqui did not treat Plaintiff or renew Plaintiff's Gabapentin or Tramadol prescriptions because he did not have Plaintiff's medical records (Doc. 63-6, p. 84). Defendant Siddiqui testified that if an inmate has an "urgent" medical need, "we get the chart. If it is not urgent, he would be rescheduled" (Doc. 63-3, p. 107).

On December 16, 2017, Plaintiff filed a grievance, stating it had been seventeen days since his Tramadol expired and three weeks since his Gabapentin expired (Doc. 1, p. 30). The grievance states that Plaintiff saw Defendant Siddiqui on December 12, 2017 and "explain[ed] to Dr. Siddiqui that my level of pain was like a 7, what meds I take and he said there's nothing that he can do without my med chart (file). The nurse stated that when they get back over to the health care she's gonna get my chart (file) and give it to

Dr. Siddiqui so he can write a new prescription for my pain meds" (*Id.* at p. 31). Menard received the grievance on December 19, 2017 (*Id.* at p. 30).

On December 20, 2017, Defendant Shah performed a jacket review of Plaintiff's medical chart (Doc. 63-2, p. 14) (Doc. 63-7, p. 31). Defendant Shah received a note that Plaintiff needed to "continue Neurontin with non-formulary" (Doc. 63-7, p. 32), and Defendant Shah prescribed Plaintiff Neurontin[3] (Doc. 63-2, p. 14-15) (Doc. 63-7, p. 34-35). Defendant Shah testified he did not issue a prescription for Tramadol because he was only asked to renew Plaintiff's Neurontin (Doc. 63-7, p. 34).

On December 21, 2017, Plaintiff was scheduled for the nurse practitioner medical call line (Doc. 63-6, p. 2). However, Plaintiff's medical chart could not be located, so he did not receive treatment from a medical provider or receive a renewal of his Tramadol prescription (Doc. 66-4, p. 40-41). Plaintiff received Robaxin and aspirin on December 21, 2017 (Doc. 63-2, p. 20-21). Plaintiff received Neurontin beginning December 27, 2017 (Doc. 63-2, p. 22).

On December 27, 2017, Plaintiff filed another grievance that explained he saw Defendant Siddiqui on December 12, 2017 but "was told he didn't have my medical chart and he will review my chart when he return to health care and renew my meds…I'm still suffering terrible pain" (Doc. 1, p. 33). The grievance notes Plaintiff needed renewals of his Gabapentin and Ultram (a generic name for Tramadol) (*Id.* at p. 34). The grievance officer's report in response to the grievance states: "Offender submitted a grievance dated

---

[3] Neurontin is a non-formulary substitute for Gabapentin and Plaintiff does not distinguish between the two medications or suggest the Neurontin was inadequate.

12-27-17 and grieves denial of medical treatment…The response dated 1-5-18 is attached and states Dr. Siddiqui Facility Medical Director and H. Hawkins, RN, Director of Nursing reviewed offender grievance and medical record and offer the following. Offender was seen on 12-6-17 on nurse sick call. . .Dr. Shah did a jacket review and ordered Neurontin for pain on 12-20-17. . .Offender is scheduled with Dr. Siddiqui to re-evaluate pain" (*Id.* at 32).

On January 8, 2018, Defendant Siddiqui wrote Plaintiff a prescription for Tramadol for a period of three months (Doc. 63-2, p. 16) (Doc. 63-3, p. 98). Plaintiff began receiving his Tramadol on January 11, 2018 (Doc. 63-2, p. 23). Plaintiff received his Gabapentin in January 2018 (Doc. 63-2, p. 24).

A counselor responded to Plaintiff's December 16, 2017 grievance on January 9, 2018 and stated, "Dr. Siddiqui, the facility Medical Director and RN Hawkins have reviewed your grievance and medical record and offer the following: On 12/16/17 and 12/27/17 you wrote a grievance regarding your pain medications, medical care and to see your surgeon. On 12/6/17 you were seen on nurse sick call. . .I have scheduled you with Dr. Siddiqui to re-evaluate your pain" (*Id.* at p. 29). A note on the response states, "contacted the Health Care Unit and was advised that Dr. Siddiqui saw the offender on 1/8/2018. Pain addressed and medication ordered" (*Id.*).

On April 10, 2018, Defendant Siddiqui prescribed Plaintiff Tramadol for a period of three months (Doc. 66-6, p. 30-31). Defendant Siddiqui testified the prescription was reasonable and necessary for Plaintiff's back pain (*Id.* at p. 31). As of February 20, 2019, Plaintiff is never without pain (Doc. 63-1, p. 11).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the moving party "shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Factual disputes are genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented, and they are material only if their resolution might change the suit's outcome under the governing law." *Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) (citation and internal quotation marks omitted). In deciding a motion for summary judgment, the court's role is not to determine the truth of the matter, and the court may not "choose between competing inferences or balance the relative weight of conflicting evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014) (citations omitted); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). Instead, "it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hansen*, 763 F.3d at 836.

## DISCUSSION

The Supreme Court has recognized that deliberate indifference to the serious medical needs of prisoners may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on a claim for deliberate indifference to a serious medical need, there are "two high hurdles, which every inmate-plaintiff must clear." *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d

587, 590 (7th Cir. 1999). First, the plaintiff must demonstrate he suffered from an objectively serious medical condition. *Id.* at 591-92. Second, the plaintiff must establish the individual prison officials were deliberately indifferent to that condition. *Id.*

A prison official exhibits deliberate indifference when they know of a serious risk to the prisoner's health exists but they consciously disregard that risk. *Holloway*, 700 F.3d at 1073 (citation omitted). "The standard is a subjective one: The defendant must know facts from which he could infer that a substantial risk of serious harm exists and he must actually draw the inference." *Rasho v. Elyea*, 856 F.3d 469, 476 (7th Cir. 2017) (quoting *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016)).

Here, no one disputes that Plaintiff suffered from an objectively serious medical condition. However, Defendants argue they are entitled to summary judgment because there is no evidence that Defendants had knowledge that Plaintiff was not receiving his medications or that Defendants engaged in a conscious, culpable refusal to renew Plaintiff's medications. Further, Defendants argue Plaintiff cannot establish an Eighth Amendment violation because he has not suffered any actual or substantial harm from the delay in receiving his pain medication.

### A. Whether Plaintiff Experienced Actual Or Substantial Harm

Defendants contend Plaintiff's deliberate indifference claim fails as a matter of law because there is no evidence Plaintiff suffered an adverse consequence as a result of the delay in receiving his pain medications. A delay in treating painful conditions may constitute deliberate indifference if the delay unnecessarily prolonged an inmate's pain. *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011). Thus, a deliberate indifference claim

fails if there is no evidence that the plaintiff would have benefitted from the treatment. *See Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1034 (7th Cir. 2019). For instance, Defendants cite to *Gabb*, where the plaintiff argued the defendants were deliberately indifferent to his back pain because they did not pursue a "better" course of treatment. *Id.* at 1033. The plaintiff failed to specify "what the specific treatment was or how it would have alleviated his back pain." *Id.* The Seventh Circuit affirmed summary judgment for the defendants because there was no evidence that "better" treatment would have provided the plaintiff any relief. *Id.* The Court emphasized that the plaintiff could not "show he suffered from serious but *avoidable*" pain. *Id.* (emphasis in original).

Here, Defendants suggest Tramadol and Gabapentin were not necessary to treat Plaintiff's pain. They argue there is no evidence that Plaintiff "would have had any different outcome or any other relief or change in his circumstances, were he to have these medications at a time sooner" (Doc. 63, p. 15). However, the record could support an opposite conclusion. Defendant Siddiqui and Defendant Shah both prescribed Plaintiff Tramadol and/or Gabapentin from October 2017 through April 2018—the same period during which they now contend the medications were unhelpful. *See Diaz v. Godinez*, 693 Fed. App'x 440, 443 (7th Cir. 2017) ("the prescription [the plaintiff] received from Menard is evidence that he really did have back pain."). Also, Defendant Siddiqui testified that the Tramadol he prescribed Plaintiff was necessary for Plaintiff's back pain (*See* Doc. 63-3, p. 27-29; Doc. 66-6, p. 31).

The true crux of Defendants' argument is that Plaintiff did not experience an amount of pain that would entitle him to more immediate treatment. Defendants note

that medical records from October 2017 state Plaintiff was ambulating without his back brace, bending at the waist, and reporting he was gaining strength (Doc. 63, p. 14). They also note that Plaintiff requested to be released from the infirmary four days before Defendant Siddiqui released him (*Id.*). However, there is also evidence in the record that suggests Plaintiff's pain was far from trivial—he underwent a spinal fusion, his surgeon and Defendants prescribed him Tramadol and Gabapentin for months, and he complained that without his medication his pain was "intense," "terrible," and at "a 7" (*See* Doc. 1, p. 30-34). "Pain is a uniquely subjective experience, and it is not appropriate to conclude at summary judgment that nontrivial pain alleged by an inmate is not deserving of treatment." *Diaz v. Godinez*, 693 Fed. App'x 440, 443-44 (7th Cir. 2017).

Based on the record, a reasonable jury could find Plaintiff suffered avoidable pain as a result of Defendants' delay in renewing his prescriptions for pain medication. Therefore, Defendants are not entitled to summary judgment on the ground that Plaintiff has not suffered any actual or substantial harm. *See Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996) (finding it was a question for a jury to determine whether the plaintiff's pain entitled him to more immediate medical treatment).

### B. Defendant Siddiqui

Defendant Siddiqui argues there is no evidence he knew Plaintiff was not receiving his pain medications. However, the record contains evidence that genuinely disputes Defendant Siddiqui's version of events. For instance, on December 5, 2017, Menard received a grievance from Plaintiff concerning his pain medications (Doc. 66-7, p. 3). The grievance, itself, is not part of the record, but on December 8, 2017, Menard's

Director of Nursing responded to Plaintiff's grievance (*Id.*). Defendant Siddiqui signed the response, which states, "Dr. Siddiqui, the facility Medical Director and I have reviewed your grievance and medical records. . .I have scheduled you with Dr. Siddiqui for a follow-up appointment related to pain meds" (*Id.*).

Plaintiff was scheduled for a follow-up appointment with Defendant Siddiqui on December 12, 2017. Unfortunately, Plaintiff did not receive treatment because his medical chart could not be located. There is a factual dispute as to whether Plaintiff and Defendant Siddiqui interacted on December 12, 2017. Nurse Mears-Attig testified that inmates are typically not permitted to leave their cellhouse for medical appointments if their charts cannot be located (Doc. 63-5, p. 76-77). Defendant Siddiqui testified, "If there is no chart, they won't even come." (Doc. 63-3, p. 110). However, Plaintiff attached a grievance to his Complaint that states he spoke to Defendant Siddiqui on December 12, 2017 and he explained his pain level was around "a 7" (Doc. 1, p. 31). Consistent with this version of events, Plaintiff testified at deposition that he had a conversation with Defendant Siddiqui on December 12, 2017 (Doc. 63-1, p. 40-41).

Also, Plaintiff attached additional grievances to his Complaint, dated December 16 and 27, 2017, in which he states he needed renewals of his pain medications because he was in "intense" and "terrible pain" (Doc. 1, p. 29-33). On January 5, 2018, a counselor responded to the December 27, 2017 grievance and stated Defendant Siddiqui reviewed the grievance, along with Plaintiff's medical records, and Plaintiff was "scheduled with Dr. Siddiqui to re-evaluate pain" (*Id.* at p. 32).

In sum, Plaintiff filed multiple grievances about his medications and there is evidence that Defendant Siddiqui reviewed the grievances and signed-off on responses. Also, Plaintiff testified he told Defendant Siddiqui in-person that he was in significant pain without his medications. When viewing the record in the light most favorable to Plaintiff, a reasonable jury could conclude that Defendant Siddiqui had actual knowledge that Plaintiff was not receiving his medications and was experiencing pain.

Defendant Siddiqui also contends there is no evidence he engaged in a culpable refusal to renew Plaintiff's medications. The parties do not dispute that Defendant Siddiqui renewed Plaintiff's medications on several occasions and, thus, took some actions to address Plaintiff's pain. However, a plaintiff does not need to prove that he was "literally ignored." *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). Instead, an inexplicable delay in responding to an inmate's serious medical condition can reflect deliberate indifference. *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020). To determine whether a delay amounts to deliberate indifference, the Court evaluates "how serious the condition in question was, how easy it would have been to treat it, and whether it exacerbated an injury or unnecessarily prolonged pain. Delay need not be extreme; failing to provide a very easy treatment or accommodation can suffice, if unnecessary suffering resulted." *Thomas v. Martija*, 991 F.3d 763, 769 (7th Cir. 2021) (internal citations omitted).

Here, the parties agree Plaintiff went a total of 40 days without Tramadol and 29 days without Gabapentin. Courts have found that much shorter delays in treatment can amount to deliberate indifference. *See Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) (failure to treat a broken nose for a day and a half sufficient to withstand summary

judgment); *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996) (finding that the question of whether the plaintiffs were in sufficient pain to entitle them to pain medication within the first 48 hours after a "beating" was "an issue for the jury"); *Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) ("Even a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference"). Additionally, as noted above, there is evidence that Plaintiff's pain was significant—he underwent spinal surgery (a lumbar fusion), was prescribed pain medications for many months, and wrote several grievances where he complained of intense pain.

The remaining factor in the analysis evaluates how easy it would have been for Defendants to treat Plaintiff's pain. Defendant Siddiqui shifts the blame for the delay in Plaintiff's treatment to the nurses at Menard. He states he could not provide Plaintiff treatment on December 12, 2017 because the nurses could not locate Plaintiff's medical chart and that nurses, not physicians, are responsible for scheduling appointments and alerting doctors when prescriptions expire. However, Plaintiff argues Defendant Siddiqui could have easily conducted a "jacket review" to renew his medications.

The record is not developed as to what triggers a jacket review or under what circumstances a physician can conduct a jacket review to renew medications. Defendant Siddiqui argues jacket reviews are only conducted when the doctor is "informed the inmate needs particular medications" (Doc. 68, p. 3). However, there is evidence that over the course of a month, Plaintiff filed—and Defendant Siddiqui reviewed—multiple grievances concerning Plaintiff's pain medications. In addition to written complaints, there is evidence Plaintiff told Defendant Siddiqui in person on December 12, 2017 that

he was experiencing terrible pain without his medications. Notably, although Defendant Siddiqui argues he could not treat Plaintiff on December 12 without his chart, Defendant Siddiqui testified that if an inmate has an "urgent" medical need, "we get the chart" (Doc. 63-3, p. 107). Also, no one disputes that Defendant Siddiqui and Defendant Shah did, in fact, conduct jacket reviews to renew Plaintiff's prescriptions on other occasions.

Defendant Siddiqui does not explain why he did not conduct a jacket review to renew Plaintiff's prescriptions, even though he had done so before and considering Plaintiff's ongoing complaints of pain. There may be a sufficient explanation from which a reasonable jury could conclude Defendant Siddiqui was not deliberately indifferent. But the record supports two possibilities: either Defendant Siddiqui was deliberately indifferent to Plaintiff in delaying the renewal of Plaintiff's medications or issues beyond Defendant Siddiqui's control were to blame. *See Thomas*, 991 F.3d at 770 (denying summary judgment where there was a factual dispute about whether the defendant caused the delay in treatment). The Court cannot resolve this dispute on summary judgment. Defendant Siddiqui's request for summary judgment is denied.

### C. Defendant Shah

Defendant Shah argues there is no evidence he had actual knowledge that Plaintiff needed his pain medication prescriptions renewed. Defendant Shah's only involvement with Plaintiff's treatment or the events in question occurred on December 20, 2017, when he conducted a jacket review of Plaintiff's medical chart and prescribed Plaintiff Neurontin. Plaintiff argues Defendant Shah was deliberately indifferent because Defendant Shah did not also renew Plaintiff's Tramadol prescription.

Defendant Shah testified he did not review Plaintiff's "jacket" for a renewal of Tramadol because he was only "requested to renew Neurontin" (Doc. 63-7, p. 35). In response, Plaintiff argues "even the most basic review of Plaintiff's medical records" would reveal that Plaintiff was a post-surgical patient in severe back pain and that Plaintiff's Tramadol prescription expired (Doc. 65, p. 7).

Defendant Shah is not guilty of deliberate indifference even if he should have known about Plaintiff's expired Tramadol prescription. Deliberate indifference occurs when a defendant "actually knew" of a substantial risk of harm to the plaintiff. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004). "Negligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk. Instead, deliberate indifference requires evidence that an official actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless." *Id.*

When viewed in the light most favorable to Plaintiff, the evidence against Defendant Shah amounts, at most, to negligence, which cannot support a finding of deliberate indifference. *See Williams v. Guzman*, 346 Fed. App'x 102, 105 (7th Cir. 2009) (granting summary judgment to the defendants where the plaintiff argued the defendants had a duty to read a nurse's note in his medical chart because "[w]ith no evidence that the doctors knew about the note and deliberately disregarded it, failure to review the nurse's note is at most negligence, which is insufficient to establish deliberate indifference."); *Scott v. David*, 2019 WL 1466301, at *5 (S.D. Ill. April 3, 2019) ("Plaintiff's attempt to establish that [the defendant] should have known about [the plaintiff's] medication complaints that were documented in his medical record is insufficient to

establish deliberate indifference. . .[The defendant's] failure to investigate further would amount to no more than mere negligence (at the very most).")). Accordingly, Defendant Shah's request for summary judgment is granted.

## Conclusion

For the foregoing reasons, the Motion for Summary Judgment filed by Defendants is **GRANTED** in part as to Plaintiff's claim against Defendant Dr. Vipin Shah and **DENIED** in part as to Plaintiff's claim against Defendant Dr. Mohammed Siddiqui. Judgment will be entered in Defendant Shah's favor at the conclusion of the case.

This case will be set for a telephonic status conference to discuss the scheduling of a settlement conference before setting the matter for trial.

**IT IS SO ORDERED.**

**DATED: March 8, 2022**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**